**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **BOBBY LEE HARRISON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 08 C 3202** |
| | ) | |
| **COUNTY OF COOK, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Bobby Lee Harrison, a pretrial detainee in the custody of the Cook County Department of Corrections (CCDOC), has sued Sheriff Thomas J. Dart, Cook County, and Dr. Ann Dunlap under 42 U.S.C. § 1983. He contends that the defendants were deliberately indifferent to his serious medical needs. He also asserts a state law claim for intentional infliction of emotional distress.

Defendants have moved for summary judgment on Harrison's claims. Harrison, who is proceeding *pro se*, has also filed a motion for leave to amend his complaint, a motion to strike the depositions of two doctors employed by defendants and to re-depose those witnesses, and a motion for a preliminary injunction.

For the reasons stated below, the Court grants in part and denies in part defendants' motions for summary judgment; denies the motion for leave to amend; denies the motion to strike; and enters and continues the motion for a preliminary injunction pending the Court's appointment of counsel to represent Harrison.

**Background**

Harrison is a pretrial detainee at the CCDOC. Dart is the Sheriff of Cook County and has supervisory responsibility over the CCDOC. Dunlap was a staff physician with Cermak Health Services (Cermak), the health care provider for all detainees housed at the CCDOC, at times relevant to this lawsuit. Harrison has sued Dart in his official capacity and Dunlap in her individual and official capacities.

Harrison has been detained at the CCDOC since September 7, 2004. He asserts that on numerous occasions throughout his confinement, defendants denied him medical treatment, provided him with inadequate or delayed care for his serious health problems, or otherwise ignored substantial risks to his health. In particular, Harrison claims to suffer from six medical conditions that, in his view, were either caused or inadequately addressed by defendants during his period of detention. *See* Am. Compl. ¶ 83.

First, Harrison contends that from approximately mid-2007 until the end of 2008, defendants denied him adequate treatment for his deteriorating vision. *See* Am. Compl. ¶¶ 11-18; Harrison Dep. 39:12-20. During this period of time, Harrison testified, he had only a single functioning lens from a pair of glasses. *Id.* According to Harrison, defendants repeatedly denied his repeated requests to see an ophthalmologist to obtain new, functioning glasses. Am. Compl. ¶¶ 13, 16, 17. Additionally, he asserts that officials at CCDOC intentionally deprived him of a pair of glasses sent to him by his appointed attorney. *Id.* ¶¶ 19-24.

Second, Harrison argues that he received inadequate treatment for severe pain,

2

bleeding, and infections in his mouth. *Id.* ¶¶ 34-39. Although he concedes that he saw dentists and other medical professionals for these afflictions on numerous occasions, Harrison argues that these providers refused to treat certain of his dental problems because of budget cuts, which prevented them from providing him with certain types of dental care that he desired. *Id.* ¶¶ 35, 39.

Third, Harrison asserts that he suffers from a gastrointestinal disorder that has been inadequately treated for approximately five years. *Id.* ¶¶ 40-48. Harrison began noticing blood in his stool in approximately July 2006. *Id.* ¶ 40. On December 19, 2006, following gastrointestinal tests, doctors at Cermak determined that Harrison suffered from a colon disease and prescribed him a medication known as sulfasalazine. *Id.* ¶ 41. He contends that defendants canceled or delayed several subsequent appointments for treatment in 2007 and 2008. *Id.* ¶¶ 42-45. Additionally, Harrison testified during his deposition that subsequent medical tests have shown that he had been misdiagnosed and did not have colon problems but instead suffered from an acid-related stomach disorder. *See* Harrison Dep. 73:21-74:4, 97:8-24. Harrison contends that he suffered for years because Cermak prescribed him the wrong medication for his gastrointestinal problems. *Id.* 74:6-14.

Fourth, Harrison contends that defendants consistently ignored his requests for a modified diet based on a supposed allergy to high-protein foods. Am. Compl. ¶¶ 49-56. As a result, Harrison, argues, he lost weight, experienced stomach cramps and loss of appetite, and suffered other unspecified health problems. *Id.* ¶¶ 52, 56. Harrison's dietary complaints appear to be related to his gastrointestinal disorder, for which he is

3

currently being treated.  *See* Harrison Dep. 102:23-103:4.

Fifth, Harrison asserts that defendants denied him treatment for back pain that he suffers as a result of an automobile accident that occurred in approximately 1995. *See* Am. Compl. ¶¶ 76-82.  He argues that on July 28, 2008, CCDOC officials took from his cell a back belt that he wore to mitigate his back pain.  *Id.* ¶ 76.  Harrison admits that he has received pain medications on various occasions but nevertheless contends that defendants have injured him by denying him a new back belt and other unspecified treatment, as well as by requiring him to sit on uncomfortable steel benches in the jail. *Id.* ¶¶ 77-78, 80-81; Harrison Dep. 125:8-22.

Finally, Harrison argues that he contracted hepatitis C as a result of defendants' continuous deliberate indifference to his physical health.  *See* Am. Compl. ¶¶ 57-67, 75. Harrison identifies three possible sources of his hepatitis C infection.  First, he asserts that in either 2006 or 2007, he was forced to walk through blood after a fight involving other detainees.  *Id.* ¶ 57; Harrison Dep. 108:6-7.  Second, defendants placed Harrison in a cell with another detainee who frequently bled onto Harrison's belongings, including milk containers from which he regularly drank.  *See id.* 108:12-111:21; Am. Compl. ¶ 57.  Third and perhaps most importantly, Harrison asserts that for years, defendants regularly provided detainees at the CCDOC with used razor blades.  *Id.* ¶¶ 59-63; Harrison Dep. 115:1-116:1.  Harrison was diagnosed with hepatitis C in July 2008 or August 2008.  *Id.* 112:13-19; Am. Compl. ¶ 67.

Harrison filed his amended complaint on December 19, 2008.  Following discovery, defendants moved for summary judgment on November 19, 2010.

4

**Discussion**

**1.    Motions for summary judgment**

On a motion for summary judgment, the Court "view[s] the record in the light

most favorable to the non-moving party and draw[s] all reasonable inferences in that

party's favor." *Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 656 (7th Cir.

2010).  Summary judgment is appropriate "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a).  In other words, a court may grant the motion "where the

record taken as a whole could not lead a rational trier of fact to find for the non-moving

party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In support of their motions for summary judgment, defendants contend that

Harrison has failed to show the existence of a genuine issue of fact regarding (1)

whether defendants were personally involved in the alleged violations of Harrison's

constitutional rights or maintained policies, practices, or customs that caused those

violations; (2) whether Harrison suffered from objectively serious medical conditions;

and (3) whether defendants were deliberately indifferent to those medical conditions.

They also argue that Harrison's state law claims fail because they are immune from

liability under Illinois law and Harrison has failed to show a triable issue of fact on these

claims.

As an initial matter, defendants suggest that due to Harrison's failure to strictly

comply with Local Rule 56.1, the Court should disregard any facts he has offered.  *See,*

*e.g.*, Dart Reply at 3.  Though the Court has "discretion to strictly enforce compliance

with its local rules regarding summary judgment motions," *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009), it concludes that it should not do so in this case.  Harrison is proceeding *pro se,* and he appears to have made a genuine effort to comply with Local Rule 56.1 in his responsive submissions by referring to and disputing specific facts contained in defendants' Local Rule 56.1 statements.  *See generally* Pl.'s Resp. to Cook County.  Therefore, in addressing defendants' motions, the Court will consider the evidence contained in both sides' submissions.

     **a.**    **Section 1983 claims**

In counts one and two, Harrison asserts that defendants were deliberately indifferent to his serious medical needs, in violation of 42 U.S.C. § 1983.  *See* Am. Compl. ¶¶ 83-89.  To prevail under section 1983, Harrison must show that defendants deprived him of a federal right and acted under color of state law.  *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  Because it is undisputed that Dart, Cook County, and Dunlap are state actors, the question is whether a reasonable jury could find that they violated Harrison's rights under federal law.

The Eighth Amendment prohibits cruel and unusual punishment, which the Supreme Court has held includes "'deliberate indifference to serious medical needs'" of a prisoner.  *Oliver v. Deen*, 77 F.3d 156, 159 (7th Cir. 1996) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Although the Eighth Amendment "only applies to convicted prisoners," pretrial detainees like Harrison "are entitled, under the Fourteenth Amendment's due process clause, to the same basic protection" provided by the Eighth Amendment.  *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 301 n.2 (7th Cir.

6

2010). To establish a due process violation, Harrison must make a two-part showing. First, he "must demonstrate that, objectively, the deprivation he suffered was sufficiently serious; that is, it must result in the denial of the minimal civilized measure of life's necessities." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (internal quotation marks omitted). Given that Harrison alleges a denial of medical care, this element is satisfied if he can show "that his medical need itself was sufficiently serious," meaning that it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention." *Id.* Second, Harrison "must establish that prison officials acted with a sufficiently culpable state of mind" to support section 1983 liability. *Id.* "Although negligence or inadvertence will not support a deliberate indifference claim, an inmate need not establish that prison officials actually intended harm to befall him from the failure to provide adequate care." *Id.* Rather, he need only show that defendants "knew of a substantial risk of harm" and disregarded that risk. *Id.*

In addition to his individual-capacity claim against Dunlap, Harrison also asserts official-capacity claims against Dunlap, Dart, and Cook County. Such claims are treated as claims against the government itself. *See Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008). "In order to survive summary judgment on a [section] 1983 official-capacity claim, the plaintiff must present evidence demonstrating the existence of an official policy, widespread custom, or deliberate act of a county decision-maker of the municipality or department." *Id.* (internal quotation marks omitted). The plaintiff must also be able to "show that the official policy or custom was the cause of the

alleged constitutional violation—the moving force behind it." *Id.*

### i.    The section 1983 claim against Cook County

Cook County argues, among other things, that it is entitled to summary judgment because Harrison has failed to provide evidence that its officials were deliberately indifferent to his serious medical needs. Harrison counters that he has presented enough evidence of widespread delays and denials of care to raise a reasonable inference that Cook County acted with deliberate indifference.

Harrison's evidence on summary judgment consists almost exclusively of copies of previous internal grievances he filed at the CCDOC in response to perceived delays or denials of medical treatment. These documents, as well as Harrison's testimony, that of his treating physicians, and medical records provided by defendants, reflect that Harrison received substantial treatment for his various medical conditions. That treatment may not have cured or ameliorated all of his Harrison's medical problems. But considering the record as a whole, the Court concludes that no reasonable jury could find that Cook County officials were deliberately indifferent to Harrison's serious medical needs.

First, Harrison has not offered evidence from which a reasonable jury could find that Cook County was deliberately indifferent to his impaired vision. Although he testified that he went without adequate eyeglasses for over a year, Harrison's testimony also indicates that he saw doctors repeatedly when he complained about his eyesight. For example, Harrison admits that he saw a doctor three weeks after requesting to do so in 2006. Harrison Dep. 27:7-13. His medical records further confirm that he saw

8

doctors repeatedly and received multiple prescriptions for glasses between 2005 and 2008. *See, e.g.*, Cook County's LR 56.1 Stmt., Ex. 3, BLH 283, 285, 288, 290, 344 (records of physician consultations). Moreover, Harrison concedes that during his time at the CCDOC, he received four or five pairs of eyeglasses. Harrison Dep. 39:23-40:15. Though Harrison may be unhappy with the quality of his treatment, he has not offered evidence raising a reasonable inference that his doctors at the CCDOC were deliberately indifferent to his impaired eyesight, as opposed to merely "'negligen[t] in diagnosing or treating'" it. *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1996) (quoting *Estelle*, 429 U.S. at 106).

Similarly, the record reflects that Harrison received substantial treatment for his various dental complaints. He visited dentists at the CCDOC on December 12, 2004, August 4, 2005, November 1, 2005, March 31, 2006, July 28, 2006, February 11, 2008, November 10, 2008, May 20, 2009, and June 3, 2009. Cook County's LR 56.1 Stmt., Ex. 3, BLH 22, 266, 307-316, 340. During these visits, Harrison received treatments including prescription mouthwash, "scaling" or cleaning of his teeth, and advice on brushing to mitigate his problems with gingivitis and bleeding gums. *Id.*; *see also* Harrison Dep. 56:9-10 ("So by my bleeding gums, he prescribed me some mouthwash stuff for the gums."). Harrison argues that he was denied certain procedures that his dentist recommended, such as bridge work, but he has not identified medical records or competent testimony from which a reasonable jury could find that he did, in fact, need such treatment. Harrison Dep. 56:1-6. By contrast, Harrison declined treatment on at least one occasion. *See* Cook County's LR 56.1 Stmt., Ex. 3, BLH 340 (medical notes

indicating that Harrison refused to consent to the extraction of a possibly infected tooth). In short, the record demonstrates that Harrison received dental treatment on many occasions in response to his complaints. He may be unhappy with the level of treatment he received in response to these complaints, but based on the present record, no reasonable jury could conclude that Harrison's doctors deliberately ignored his need for dental care. *Steele*, 82 F.3d at 178.

The same is true regarding Harrison's gastrointestinal and dietary conditions. Harrison concedes that, in response to his request for a test after he experienced blood in his stool, he was tested and diagnosed with colitis. Harrison Dep. 72:7-24, 73:13-18; Dunlap Dep. 34:13-15 (noting that Harrison received a colonoscopy in December 2006). His medical records show that he was treated for this condition with sulfasalazine from December 2006 until approximately 2009, when his diagnosis was changed. *See generally* Cook County's LR 56.1 Stmt., Ex. 3 (medical records); *see also* Harrison Dep. 73:21-22 (discussing his colitis diagnosis and noting that he "took the medication for like four years"). Dunlap's deposition testimony corroborates the records: she stated that she repeatedly renewed Harrison's sulfasalazine prescription and referred Harrison to a gastrointestinal specialist for additional treatment. *See generally* Dunlap Dep. 36-38; *id.* 59:24-60:7. Finally, Harrison's records reflect that he received an esophagogastroduodenoscopy on November 16, 2009. *See* Cook County's LR 56.1 Stmt., Ex. 3. Put simply, Harrison received extensive treatment for his gastrointestinal problems. Though his doctors at Cermak may have misdiagnosed his gastrointestinal disorder, "a misdiagnosis is insufficient to satisfy the subjective

10

component of a deliberate-indifference claim." *Williams v. Guzman*, 346 Fed. Appx.
102, 106 (7th Cir. 2009); *see also McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir.
2010) ("[N]egligence, even gross negligence, does not violate the Constitution."). For
these reasons, and because Harrison has provided no evidence plausibly suggesting
that his doctors prevented him from receiving a restricted diet, no reasonable jury could
find that Cook County was deliberately indifferent to Harrison's gastrointestinal and/or
dietary problems.

Nor has Harrison provided evidence from which a reasonable jury could find that
Cook County ignored his back pain. As noted above, Harrison's complaint in this
regard is that prison officials deprived him of his back belt and required him to sit on
uncomfortable steel benches, which exacerbated his back pain. *See* Am. Compl. ¶¶
76-78. He offers no evidence that Cook County or Dunlap played any role in these
alleged deprivations. Indeed, it is unlikely that any such evidence exists, since "[t]he
Cook County Jail, and the [CCDOC], are solely under the supervision and control of the
Sheriff of Cook County," an independent elected official. *Thompson v. Duke*, 882 F.2d
1180, 1187 (7th Cir. 1989). Moreover, Harrison concedes that when he complained to
Dunlap about his back pain, she examined him, referred him for an x-ray, and
prescribed him pain medication. Harrison Dep. 128:6-129:3. In short, no jury could
reasonably infer that Cook County was deliberately indifferent to Harrison's back pain.

Harrison has also failed to provide sufficient evidence that Cook County ignored
his hepatitis C infection. Harrison admitted during his deposition that he received
hepatitis C testing at Cermak. Harrison Dep. 113:3-6. He contends that he has

received no hepatitis C treatment, but Dunlap testified that Harrison did not need treatment in light of his condition, which his treating physicians were monitoring. *See* Dunlap Dep. 62:3-7 ("His liver ultrasound is completely normal. His liver enzymes are only slightly elevated. His SED rate is two. He's seen by a GI specialist who would determine whether or not he needed any treatment."). She also stated that aggressive treatment of his hepatitis C would be risky under the circumstances. *Id.* 62:8-15 ("Given those parameters, the use of Interferon would be thought of as more dangerous than his current status of hepatitis C. . . . However, he has been referred to a GI specialist and that is part of what the GI specialist is evaluating.").

Aside from Harrison's own protestations that he should have received some additional form of hepatitis C treatment, he has offered no evidence plausibly suggesting that his treating physicians incorrectly assessed the severity of his hepatitis C infection. In the absence of such facts, no reasonable jury could find Dunlap's analysis to be so flawed that "no minimally competent professional would have so responded under th[e] circumstances." *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008) (internal quotation marks omitted); *see also id.* (noting that [a] medical professional is entitled to deference in treatment decisions unless" this standard is satisfied). Rather, based on the medical records and Dunlap's testimony, Harrison appears to have been treated to the extent necessary in light of his symptoms. At most, Harrison's evidence suggests only that his physicians at the CCDOC negligently prescribed an incorrect course of treatment for Harrison's hepatitis C. This is insufficient to support a deliberate indifference claim. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008) ("Deliberate indifference is not medical malpractice; the

12

Eighth Amendment does not codify common law torts.").

Finally, Harrison's argument that Cook County is responsible for his contraction of hepatitis C fails as a matter of law. As Harrison made clear during his deposition, he believes that he contracted hepatitis C as a result of conditions at the CCDOC—namely, his exposure to used razors and the blood of other detainees, including a former cellmate. *See generally* Harrison Dep. 108-10, 115-16. Responsibility for the conditions of an Illinois jail, however, lies with the sheriff, not the county. *See* 55 ILCS 5/3-6017; *see also Thompson*, 882 F.2d at 1187. Because the sheriff "is an independently-elected constitutional officer who answers only to the electorate," *id.*, Cook County cannot be held liable for Dart's alleged failure to prevent Harrison's contraction of hepatitis C as a result of conditions at the CCDOC. *See also id.* (noting that a plaintiff "cannot maintain a section 1983 action against Cook County for 'practices, policies, or actions' which are unrelated to that entity," such as the failure of the Cook County Sheriff's office to properly train its employees).

In summary, Harrison has failed to offer evidence from which a reasonable jury could conclude that Cook County officials were deliberately indifferent to his serious medical needs. Therefore, Cook County is entitled to summary judgment on Harrison's section 1983 claims against it.

### ii.    Section 1983 claim against Dunlap

Harrison also sues Dunlap in her individual and official capacities. *See* Am. Compl. ¶ 8. He asserts that Dunlap "is the head medical doctor of Division Ten (10) dispensary" and "is responsible for supervising the medical staff of Division Ten" and

"for providing detainees with adequate Health Care services." *Id.*

Harrison's official capacity claim against Dunlap fails as a matter of law. "It is well-settled law that claims against municipal officials in their official capacities are really claims against the municipality and, thus, are redundant when the municipality is also named as a defendant." *Union Pac. R.R. Co. v. Vill. of South Barrington*, 958 F. Supp. 1285, 1291 (N.D. Ill. 1997). As discussed above, Harrison has named Cook County as a defendant in this lawsuit. Moreover, even if Harrison could pursue a separate official-capacity claim against Dunlap, it would fail for the same reasons as Harrison's section 1983 claim against Cook County.

Nor can Harrison maintain his individual-capacity section 1983 claim against Dunlap. To prevail on this claim, Harrison "must show that the government officer caused the deprivation of a federal right." *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1012 (7th Cir. 2000) (internal quotation marks omitted). For the same reasons that Harrison has failed to raise a genuine issue of fact regarding whether Cook County deprived him of a federal right, no reasonable jury could find that Dunlap, a Cook County employee, personally caused any such deprivation. Therefore, Dunlap is entitled to summary judgment on all of Harrison's claims against her.

### iii. Section 1983 claim against Dart

Harrison also asserts an official-capacity section 1983 claim against Dart. Dart contends that summary judgment is appropriate because Harrison has failed to provide evidence that Dart's office maintained a policy, custom, or practice that deprived him of his constitutional rights. Harrison counters that he has presented evidence raising a

triable issue of fact regarding whether officials at the CCDOC were deliberately indifferent to his medical needs.

To the extent that Harrison asserts that Dart violated section 1983 based on Cook County's alleged denials or delays of treatment, his claim fails as a matter of law. As noted earlier, Cook County and the Cook County Sheriff's office are separate entities with distinct responsibilities. Cook County, through Cermak, is responsible for providing medical care to detainees. Dart's office, by contrast, is responsible for operating and maintaining the CCDOC as a jail. *See Thompson*, 882 F.2d at 1187. Harrison has offered no evidence or argument from which a reasonable jury could conclude that Dart's office provided medical care to inmates or otherwise contributed to Cook County's alleged deliberate indifference to Harrison's various ailments. For these reasons, as well as those discussed earlier with respect to Cook County, no reasonable jury could conclude that Dart is liable to Harrison under section 1983 based on a failure to provide him with adequate medical treatment.

Harrison also argues that Dart's acts and omissions in maintaining the jail violated his constitutional rights. Specifically, he contends that the CCDOC exhibited deliberate indifference to his well-being by (1) depriving him of his back belt and (2) exposing him to other inmates' blood, thereby causing him to contract hepatitis C.

With regard to the back belt, Harrison's section 1983 claim fails because he has not provided sufficient evidence that this deprivation resulted from a policy, custom, or practice of Dart's office. Harrison has offered no evidence that the CCDOC had a policy of regularly depriving inmates of medical equipment, nor has he shown that he or any other inmate was deprived of such property on a regular basis. Even taking into

15

account Harrison's allegation that the post office at the CCDOC failed to deliver a pair of glasses to him, the evidence does not support a reasonable inference that the CCDOC had a "widespread and well settled" practice or custom of denying medical equipment to detainees. *Thomas*, 604 F.3d at 303; *see also Gable v. City of Chicago*, 296 F.3d 531, 538 (7th Cir. 2002) (internal quotation marks omitted) (holding that three instances of misconduct by city officials "do not amount to a persistent and widespread practice" for purposes of section 1983 liability).

Harrison's evidence regarding his exposure to other inmates' blood, however, would permit a reasonable jury to find that Dart maintained a practice of deliberate indifference in this regard. Defendants concede that Harrison was diagnosed with hepatitis C in July 2008, four years after he entered the CCDOC. *See* Cook County's LR 56.1 Stmt. ¶ 59. Harrison testified that he tested negative for hepatitis C in 2005 or 2006. Harrison Dep. 117:9-16. He also stated that for years, CCDOC officials distributed used razors to detainees. According to Harrison, the razors sometimes contained blood and hair. *Id.* 115:18-19. Moreover, when Harrison showed the razors to CCDOC officers, they agreed that the razors were used. *Id.* 115:21-116:1 ("I showed it to the officer. The officers come back and sometimes they would take them back from the inmates. . . . They admit it themselves. Most of the officers say, 'Yea, you're right. They [are] used."). Despite this, an affidavit signed by Harrison and another detainee, Bree Williams, states that CCDOC officers "passed out used Razors three to four times per week." Docket no. 183 at 70 (proposed second amended complaint and exhibits). Harrison testified that he received used razors in "[e]very division I've ever been in" at the CCDOC. Harrison Dep. 143:16.

16

As the Seventh Circuit has held, "in situations where rules or regulations are required to remedy a potentially dangerous practice," a municipality's "failure to make a policy is also actionable." *Thomas*, 604 F.3d at 303. Harrison has offered evidence giving rise to a reasonable inference that the CCDOC permitted or failed to prevent its officers from regularly distributing used razors to detainees. A reasonable jury could conclude that Dart was "'deliberately indifferent as to the known or obvious consequences'" of this practice and thereby caused Harrison to be infected with hepatitis C. *Id.* (quoting *Gable*, 296 F.3d at 537). Accordingly, Dart is not entitled to summary judgment on Harrison's claim that he contracted hepatitis C as a result of the CCDOC's deliberate indifference to his health.

### b. IIED claims

In count three, Harrison contends that "[d]efendants' practice of delaying or denying" his medical treatment constitutes intentional infliction of emotional distress. Am. Compl. ¶ 90. Defendants counter that they are immune from liability to Harrison under the Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1-101, and that even if this immunity does not apply, Harrison has failed to show that there is a triable issue of fact on the merits of his IIED claims.

Section 4-105 of the Tort Immunity Act provides that "neither a local public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody." 745 ILCS 10/4-105. The Act is inapplicable, however, "where the employee, acting within the scope of his employment, knows from his observation of conditions that the prisoner is in need of immediate medical care and, through willful and wanton conduct, fails to take

17

reasonable action to summon medical care." *Id.* For purposes of this statute, the Seventh Circuit has held that "the willful and wanton standard is remarkably similar to the deliberate indifference standard." *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007) (internal quotation marks omitted).

As discussed above, Cook County and Dunlap are public entities or employees. Harrison has sued them for their alleged failure to provide him with sufficient medical care. As such, section 4-105's immunity protects them from liability to Harrison under Illinois law.[1] Moreover, as discussed above, Harrison has failed to show that there is a genuine issue of fact regarding whether Cook County or Dunlap were deliberately indifferent to his serious medical needs. For this reason, the "willful and wanton conduct" exception in section 4-105 does not apply to Cook County and Dunlap. *See Williams*, 509 F.3d at 404. Accordingly, Cook County and Dunlap are entitled to summary judgment on Harrison's IIED claims against them.

Dart, by contrast, is not entitled to immunity. Dart is correct that section 4-105 likely would absolve him of liability for failing to obtain necessary medical care for Harrison. As discussed above, however, a reasonable jury could conclude that CCDOC

---

[1] In their response brief, Cook County and Dunlap contend that a separate provision of the Tort Immunity Act, section 6-105, immunizes them against Harrison's IIED claims. Cook County Resp. at 14; 745 ILCS 10/6-105. This provision, however, protects public entities or employees against liability "for injury caused by the failure to make a physical or mental examination." *Id.* Because Harrison's IIED claim focuses on the denial of care for known medical conditions, the Court concludes that section 4-105, not section 6-105, controls whether Cook County and Dunlap are immune from liability to Harrison. *See* Am. Compl. ¶ 90 (alleging that "[d]efendants' practice of delaying or denying" care constitutes intentional infliction of emotional distress"); *see also Alvarez v. Riesche*, No. 98 C 5552, 1998 WL 519383, at *10 (N.D. Ill. July 12, 1999) ("Section 6-105 speaks to liability flowing from a failure to examine, not to a failure to react to injuries that are patent.").

officials knowingly distributed used razors to detainees and that Dart had a practice of permitting them to do so. Nothing in the text of section 4-105 suggests that it also immunizes public officials against liability for knowingly exposing detainees to infectious diseases. Moreover, even if section 4-105 applied to CCDOC's alleged conduct in this case, a genuine issue of fact remains regarding whether Dart was deliberately indifferent to Harrison's health. Because a jury could therefore conclude that Dart acted willfully and wantonly by failing to prevent Harrison's exposure to other detainees' blood, Dart is not immune from liability under section 4-105. *See Williams*, 509 F.3d at 404.

Turning to the merits of Harrison's IIED claim, the Court finds that Dart is not entitled to summary judgment. To prevail on a claim of intentional infliction of emotional distress, Harrison must show that "(1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that his conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress." *Cangemi v. Advocate S. Suburban Hosp.*, 364 Ill. App.3d 446, 470, 845 N.E.2d 792, 813 (2006). Based on the evidence regarding CCDOC's distribution of used razors and Harrison's contraction of hepatitis C, a reasonable jury could conclude that Harrison suffered severe emotional distress because CCDOC officials acted outrageously and with knowledge of a high probability that their actions would cause severe emotional distress to Harrison or other detainees.

### c. Summary

No genuine issue of fact remains with regard to any of Harrison's claims against Cook County and Dunlap. The Court therefore grants these defendants' motion for summary judgment. By contrast, a reasonable jury could conclude that the Cook County Sheriff was deliberately indifferent to Harrison's health based on a widespread practice of distributing used razors to inmates at CCDOC. For the same reason, a jury could find the Sheriff liable to Harrison for intentional infliction of emotional distress. Accordingly, the Court denies Dart's motion for summary judgment with respect to Harrison's section 1983 and IIED claims arising out of his contraction of hepatitis C. In all other respects, the Court grants Dart's motion.

### 2. Harrison's motion for leave to amend

Harrison also seeks leave to amend his complaint to add twenty-nine new defendants and additional allegations relating to his medical treatment at CCDOC. "[D]istrict courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008).

The Court denies Harrison's motion for leave to amend. Despite the Court's repeated admonitions, Harrison has engaged in undue delay in seeking to amend his complaint. He filed two motions to amend in 2010, neither of which included a proposed amended complaint as required. *See* docket nos. 98, 140. Citing this reason, the Court denied these motions without prejudice. *See* docket nos. 99, 143.

Harrison then waited until March 21, 2011—almost three years after initiating this lawsuit, one year after first seeking leave to amend, and over four months after Dart and Cook County moved for summary judgment—before filing the present motion for leave to amend, this time including his forty-eight page proposed amended complaint. It is far too late now for Harrison to add new claims and new defendants to this lawsuit.

**3.      Harrison's motion to strike**

Harrison has also moved to strike the depositions of Dunlap and Dr. Nagib Ali, another physician employed by Cermak.  In a series of previous orders, the Court set a procedure for Harrison to depose Dunlap and Ali by written questions pursuant to Federal Rule of Civil Procedure 31.  According to Harrison, defendants failed to comply with the procedures this Court established for the depositions.  He argues that his own written questions were not presented to the defendants and that defendants' attorneys coached Dunlap and Ali prior to their depositions.  He seeks a second opportunity to depose these witnesses.

 Based on its review of the transcripts of these depositions, the Court concludes that the parties substantially complied with its instructions for taking the depositions. Harrison has provided no basis for the Court to conclude that defendants' attorneys improperly coached the witnesses or otherwise violated the Court's directions. Therefore, the Court concludes that Harrison is not entitled to re-depose Dunlap and Ali and denies his motion to strike.

**4.      Harrison's motion for a preliminary injunction**

Finally, Harrison has moved for a preliminary injunction "to prevent any further

21

irreparable injury as a result of defendants' ongoing violation of his constitutional rights." Pl.'s Mot. for Prelim. Inj. at 1. Though it is unclear precisely what relief Harrison seeks, he appears to request that the Court enter an order requiring the defendants to provide him with any medical care necessary to prevent any further suffering or deterioration in his condition. *See id.* at 3.

As discussed above, the Court finds that defendants are entitled to summary judgment on all of Harrison's claims that are not related to his contraction of hepatitis C. Harrison also appears to concede that CCDOC no longer provides detainees with used razors. *See, e.g.*, Harrison Dep. 116:12-18 ("I filed so many grievances on the issue, in around September, the director, he pulled all the razors off the shelf. . . . This time the razor come in a little plastic baggie."). Nevertheless, the Court will enter and continue Harrison's motion for a preliminary injunction pending the appointment of counsel to represent him. Once the Court appoints counsel for Harrison, it will either order briefing on the motion or schedule a hearing at which the parties may present arguments.

### Conclusion

For the reasons stated above, the Court grants Cook County and Dunlap's motion for summary judgment [docket no. 159] and grants in part and denies in part Dart's motions for summary judgment [docket nos. 153]. The Court denies plaintiff's motion for leave to amend his complaint [docket no. 181] and his motion to strike defendants' depositions [docket no. 179]. Plaintiff's motion for a preliminary injunction [docket no. 205] is entered and continued pending the Court's appointment of counsel to represent Harrison on his remaining claim. The Court will enter a separate order

appointing counsel and setting the case for a further status hearing.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 12, 2011